IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

SPENCER L. LINDSAY, )
 )
                Plaintiff, ) **CIVIL ACTION**
 )
v. ) No. 12-3167-MLB
 )
EMMALEE CONOVER, )
 )
                Defendant. )
 )

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment.[1] (Doc. 10). The motion has been fully briefed and is ripe for decision. (Docs. 11, 19, 20, 22, 25, 27). Defendant's motion is granted for the reasons herein.

**I.  Facts**

In 2011, plaintiff was incarcerated at Winfield Correctional Facility ("Winfield"). Defendant Emmalle Conover was the Warden of Winfield. On April 8, 2011, the Kansas Court of Appeals issued an unpublished decision vacating plaintiff's sentence, which was a term 42 months, and remanding the case to the Russell County District Court for resentencing. The mandate was not issued until May 12, 2011. On April 19, the district court proceeded with resentencing. The district court judge resentenced plaintiff to 40 months. At that time, plaintiff had been incarcerated since approximately April 15, 2009.

---

[1] The court converted defendant's motion to dismiss to one for summary judgment on October 30, 2012. (Doc. 21). The parties were then provided with additional time to supplement their briefing and attach additional exhibits.

Case 5:12-cv-03167-MLB-KGG   Document 28   Filed 01/25/13   Page 2 of 9

After returning to Winfield, plaintiff filed a grievance to the records department asserting that he should be immediately released because his sentence was reduced to 40 months. Plaintiff's request was denied on the basis that the journal entry had not been received and his sentence had not been recalculated. Plaintiff's request was not submitted to defendant. On April 26, plaintiff filed an emergency grievance with defendant. The grievance was received by defendant's office on April 27. The grievance stated that plaintiff was being detained without a valid order of detention because his current incarceration was vacated by the Kansas Court of Appeals. Plaintiff's grievance stated he had attached both the appellate opinion and the request sent to the records department for review.

The district court judgment was filed with the district court clerk on May 3. Defendant responded to plaintiff's grievance on May 5. Defendant stated that KDOC had not received any official document from the courts at that time and that plaintiff would not be released until the prison received notice and his release date could be reviewed. The journal entry of the judgment was transmitted to the Kansas Department of Corrections and received on May 5.

Prior to the receipt of the journal entry, the sentence computation unit of KDOC had not received any notification of plaintiff's resentencing from the district court. The sentence computation unit of KDOC receives journal entries from district court clerks and then calculates sentences based on applicable credits available to inmates. The unit then informs the facilities when an inmate is to be released. After receiving plaintiff's journal entry, the unit filled out a sentence computation worksheet. Plaintiff's

earliest release date was determined to be March 25 and a latest release date of September 25. Due to the receipt of good time credit, plaintiff was eligible for immediate release.

Plaintiff was released from Winfield on May 5.

Plaintiff filed a complaint against defendant alleging that defendant violated his rights to be free from unlawful incarceration. Defendant moves for summary judgment on the basis that there was no unlawful detention in this case.

## II. Summary Judgment Standards

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III. Analysis**

    **A.    Official Capacity Claim**

Plaintiff brought claims against defendant in both her personal and official capacity. Defendant moves to dismiss the official capacity claims on the basis that the State of Kansas may not be sued for damages in section 1983 claims. The Tenth Circuit has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Stidham v. Peace Officer Stds. & Training</u>, 265 F.3d 1144, 1156 (10th Cir. 2001). Thus, summary judgment in favor of defendant in her official capacity is appropriate.

    **B.    Personal Capacity Claim**

Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See <u>Am. Mfr's. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999). There is no dispute that defendant was acting under color of state law.

-4-

## **Qualified Immunity**

While section 1983 permits the possible vindication of a plaintiff's rights, non-meritorious suits exact a high cost upon society and law enforcement personnel. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). In order to balance the competing interests, government officials performing discretionary duties are afforded qualified immunity shielding them from civil damages liability. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009). Qualified immunity protects these officials unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well. See Horstkoetter, 159 F.3d at 1277.

When a defendant claims qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a constitutional right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. Pearson, 129 S. Ct. at 815-16. As noted in Pearson, courts are no longer required to follow the two-step sequence mandated by Saucier v. Katz, 533 U.S. 194 (2001). Id. at 818. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. The court will first address the clearly established prong.

**Clearly Established Constitutional Right**

The court must determine whether the right at issue was sufficiently clear that defendant would have understood that her conduct violated a constitutional right that was clearly established at the time the alleged act took place. See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996). This standard, however, must be used in a particularized manner[2] because "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter, 159 F.3d at 1278. Were this level of particularity not required, Harlowe "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" Anderson, 483 U.S. at 639-40 (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).

Plaintiff essentially contends that he was being confined in violation of his Fourteenth Amendment rights and that defendant had a constitutional obligation to investigate his claim that his sentence had been vacated by the Kansas Court of Appeals. The Fourteenth Amendment guarantees the right of an individual to be free from a deprivation of liberty without due process. The question before the

---

[2] The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995); see also Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Horstkoetter v. Dept. of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998).

court is whether defendant violated plaintiff's constitutional rights by failing to release him after receiving plaintiff's grievance.

Plaintiff's original sentence was vacated by the Kansas Court of Appeals on April 8, 2011.  The appellate court, however, did not order plaintiff's immediate release but remanded the case for resentencing. It also noted that on resentencing the district court could chose not to depart when imposing the new sentence.  Therefore, there is nothing in the appellate court opinion which would require defendant to release plaintiff from custody.

The district court proceeded with resentencing prior to the issuance of the mandate.  The district judge sentenced plaintiff to a reduced term of 40 months on April 19.  Plaintiff contends that he should have been immediately released following the resentencing. Plaintiff cites several cases for the proposition that a sentence is effective upon is pronouncement from the bench.  (Doc. 19 at 11). Kansas law states that the "journal entry is thus a record of the sentence imposed; but the actual sentencing occurs when the defendant appears in open court and the judge orally states the terms of the sentence."  State v. Moses, 227 Kan. 400, 402, 607 P.2d 477 (1980).

The court agrees with plaintiff that a sentence is effective when it is pronounced.  However, Kansas law further provides as follows:

> (a) When any person has been convicted of a violation of any law of the state of Kansas and has been sentenced to confinement, it shall be the duty of the sheriff of the county, upon receipt of a certified copy of the journal entry of judgment, judgment form showing conviction, sentence, and commitment, or an order of commitment supported by a recorded judgment of sentence, to cause such person to be confined in accordance with the sentence.
> (b) The certified copy of a judgment and sentence to confinement or imprisonment shall be sufficient authority for the jailer or warden or other person in charge of the

>     place of confinement to detain such person for the period
>     of the sentence.

K.S.A. 22-3427.

Therefore, plaintiff's sentence he was serving prior to April 19 had been calculated based on the sentence he received in 2009. Defendant had not received any documentation, i.e. journal entry, to support plaintiff's request for relief. Moreover, the sentence plaintiff received was not a time served sentence. In order to be eligible for release, plaintiff must have earned good time credit which is indisputably calculated by the sentence computation unit. Defendant's insistence that the journal entry be received prior to processing plaintiff's release did not violate plaintiff's constitutional rights. Moreover, defendant's failure to call the Russell Count Clerk, as requested by plaintiff, did not violate plaintiff's constitutional rights. Defendant was not required by either the Constitution or statute to investigate independently plaintiff's claim that he should be released. Scull v. New Mexico, 236 F.3d 588, 598 (10th Cir. 2000).

Therefore, defendant is protected by qualified immunity. Defendant's motion for summary judgment is therefore granted. (Doc. 10).

**IV. Conclusion**

Defendant's motion is granted. (Doc. 10). The clerk is ordered to enter judgment in favor of defendant.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated

-8-

by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this 24th day of January 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE